IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Dean Irvin, | ) | C/A No.: 4:10-2565-TLW-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Rooms To Go, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Dean Irvin ("Plaintiff") filed this action on August 31, 2010 in the Horry County Court of Common Pleas, seeking recovery under federal causes of action related to his former employment at the Myrtle Beach, South Carolina Rooms to Go furniture store ("Store") of Defendant RTG Furniture Corp. of Georgia (incorrectly identified in the Complaint as "Rooms To Go") ("Defendant"). Defendant timely removed the action on October 1, 2010 pursuant to 28 U.S.C. § 1331 on the basis of federal question jurisdiction.

This matter comes before the court on Defendant's motion for summary judgment filed July 15, 2011 [Entry #29]. After two extensions, Plaintiff filed a response [Entry #38], and Defendant filed a reply [Entry #39]. After considering the memoranda and the arguments of counsel at a hearing held on October 4, 2011, the undersigned recommends that Defendant's motion for summary judgment be granted.

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.). Because the motion for summary judgment is dispositive, this report and recommendation is entered

for the district judge's consideration.

I.      Factual Background

Plaintiff is an African-American male who was 58 years old when he was terminated by Defendant in October 2009. He was hired as a sales associate in May 2007 by Robert "Bob" Beadling, the Store Manager. Pam Deluca was the Assistant Store Manager and reported to Beadling. Beadling reported to the Regional Vice President Gary Hand, who reported to Elliot Kalick, Vice President of Sales.

Plaintiff received the Store and Office Associate Handbook, orientation and training for his role as a sales associate responsible for selling furniture to customers entering the Store. The Store's sales associates operated on an "Up" system in which they would log in upon arriving at work, which would determine the order in which they would greet and serve customers. Exceptions to the Up system existed, such as a "Be Back," which honored a customer's request to work with a specific employee.

Plaintiff was a top sales performer, but had a documented history of aggressive behavior and intimidating conflict with coworkers over customers. Plaintiff received counseling from Defendant's management, including several meetings with Beadling and Deluca in 2008. Plaintiff himself wrote to Defendant's office of Human Resources ("HR") a series of letters in which he complained that management portrayed him in a negative manner by accusing him of having an anger issue. Plaintiff's letters also document disputes he had with his coworkers over customers (and who should receive credit for sales) and complained that he felt he was being treated differently than his coworkers.

2

Over the course of three months, Plaintiff received three Final Notices regarding his behavior. On December 16, 2008, Hand issued Plaintiff a Final Notice that stated:

> Based on the pattern of behavior this past year[,] this is to serve as final notice.
>
> I have reviewed all of the given information from my previous visit(s) and have determined that [Plaintiff] needs to control his emotions and his overall behavior. There are to be no more disruptions while in the showroom and all conflicts with sales/office associates and customers need to be directed to and discussed with the Store Management (Bob and Pam) only when available. Any aggressive behavior or issues that are not handled through the Store Management will not be acceptable. Failure comply will lead to suspension and up to termination[.]

[Entry #29-3 at 92]. Hand further suggested to Plaintiff that he may want to take advantage of the company's Employee Assistance Program ("EAP") to help deal with his anger problems. [Entry #29-7, ¶ 8]. Plaintiff signed and dated this warning, and he acknowledges that he knew Defendant expected him to take any conflicts with other employees to Store management. [Entry #29-2 at 114–117; #29-3 at 92]. Plaintiff also understood that any future policy violations could lead to his discharge. [Entry #29-2 at 117].

On January 25, 2009, Plaintiff received a second Final Notice for violating the Up system and was advised that any violation of company policy in the future could result in his termination. [Entry #29-3 at 4–5; #29-3 at 95].

On March 12, 2009, Plaintiff received a third Final Notice and was suspended for three days for another violation of the Up system. *Id.* at 11–12, 96. Following his suspension, Kalick and Hand had a conference call with Plaintiff to discuss his performance problems. [Entry #29-3 at 22–23; #29-4 at 16–17]. Plaintiff continued to deny having done

anything inappropriate and claimed that management was falsely accusing him of misconduct. [Entry #29-3 at 24]. Plaintiff complained about his suspension, but did not indicate that he believed his race, age, or alleged disability were the reasons for his suspension. *Id*.

On September 28, 2009, Plaintiff was involved in a series of incidents that resulted in his ultimate discharge. Plaintiff was scheduled to work the evening shift with Deluca and another sales associate, Luann Duncan. [Entry #29-5, ¶ 5, 8–9]. The Store was short-staffed because the office manager was out sick, so Deluca was covering both the office and sales floor. *Id*. At approximately 6:45 p.m., Plaintiff asked Deluca if he could take his lunch break to meet his family at a nearby restaurant. *Id.* Deluca explained that, because the day-shift sales associates had left and because the Store was already short-staffed, she could not allow him to leave the Store. [*Id*.; Entry #29-15, ¶ 3, 4–5]. Defendant stated that Deluca's actions were not unusual as evening employees are aware that they should take their breaks before the day shift employees leave. [Entry #29-5, ¶ 5, 8–9]. Plaintiff cannot recall any other occasion when the Store was left manned by only two employees. [Entry #29-3 at 52].

According to Defendant, Plaintiff became irate, yelling and pointing his finger in Deluca's face, saying that he was going to take his break and that she could not stop him. [Entry #29-5, ¶ 5, 8–9; #29-15, ¶ 3, 4–5]. He told Deluca that she had no authority over him. [Entry #29-5, ¶ 5, 8–9]. Defendant submits that Deluca was physically intimidated by Plaintiff and informed him that he if left, he should not return until management determined

the appropriate action. *Id*. Plaintiff continued to yell in Deluca's face, screaming that she had no authority over him and that she could not do anything to him. *Id*. Deluca was unnerved by the incident and she attempted to contact Hand and Kalick for assistance. *Id*.

According to Defendant, later that same night, Plaintiff became confrontational and aggressive again. Plaintiff was servicing several customers, and one of them approached Duncan for assistance. [Entry #29-15, ¶ 3, 4–5]. Plaintiff confronted the customer about asking Duncan for help. *Id*. Rather than embarrass the customer, Duncan walked away and surrendered the customer to Plaintiff. *Id*.

Shortly thereafter, another customer asked Duncan if she could ring up her purchase, as she could not wait any longer for Plaintiff's assistance because she had a flight to catch. *Id*. Thereafter, Plaintiff demanded that Deluca credit the sale to him. [Entry #29-5, ¶ 5, 8–9]. Deluca told him that pursuant to company policy, once the customer asked Duncan for her assistance, the customer was no longer considered Plaintiff's customer. [Entry #29-5, ¶ 5, 8–9; Entry #29-7, ¶ 4]. Plaintiff began to argue with her, and Deluca walked away. [Entry #29-5, ¶ 5, 8–9]. Plaintiff followed her, demanding that he receive credit for the purchase; Deluca again explained that company policy dictated that Duncan get the credit under these circumstances. *Id*. According to Defendant, Plaintiff yelled at Deluca, called her a liar, pointed his finger an inch from her face, and threatened that he "will get her." *Id*. Duncan observed that Deluca was visibly shaken and trembling after Plaintiff's verbal assault of her. [Entry #29-15, ¶ 3].

Deluca reported these incidents to both Hand and Kalick. [Entry #29-5, ¶ 5]. Hand

5

arrived a few days later to conduct an investigation. [Entry #29-7, ¶ 12]. He met with both Deluca and Duncan and obtained statements from them documenting what they witnessed. [*Id.*, 18–19]. Duncan requested that she not be scheduled to work the closing shift with Plaintiff again. [Entry #29-15, ¶ 3]. Hand also met with Plaintiff, who denied that he behaved as described by Deluca and Duncan. [Entry #29-7, ¶ 12, 21]. Plaintiff claimed that Duncan was trying to steal his customers and that, when he approached Deluca about it, she called him a liar. *Id.* Plaintiff denied yelling or pointing his finger in Deluca's face. *Id.*

When Hand advised him that Duncan had witnessed the events and corroborated Deluca's statement, Plaintiff called her a liar. *Id.* After completing the investigation and reviewing Plaintiff's past performance history, Hand, Kalick, and HR decided that Plaintiff should be terminated for his insubordinate conduct toward Deluca on September 28, 2009. [Entry #29-4 at 18–19; #29-8 at 6–8]. Hand advised Plaintiff of his termination on October 8, 2009. [Entry #29-7, ¶ 13].

Prior to his termination, but after the September 28, 2009 incidents, Plaintiff sent his final letters to HR, complaining about how Deluca treated him that night, as well as other non-specific complaints about management's "insubordination" towards him. [Entry #29-3 at 101–106]. Plaintiff admits in this letter that he called Deluca a liar on September 28, 2009. [Entry #29-3 at 101–103].

On January 2, 2010, Plaintiff filed a charge of discrimination with the South Carolina Human Affairs Commission ("SCHAC") and the United States Equal Employment Opportunity Commission ("EEOC") on January 2, 2010. [Entry #29-3 at 72–73, 116].

Plaintiff selected race, sex, retaliation, and disability as the bases for what he believed was the unlawful treatment against him. [Entry #29-3 at 73, 116]. After investigation, the EEOC dismissed the charge and provided Plaintiff a notice of right to sue. Plaintiff timely filed this action alleging claims for: (1) age discrimination in violation of the Age Discrimination in Employment Act, 26 U.S.C. § 621 et seq. ("ADEA"); (2) race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"); (3) disability discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"); (4) hostile work environment in violation of the ADA; and (5) retaliation in violation of Title VII.

II.     Discussion

    A.     Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot

7

produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

    B.    Analysis

        1.    ADEA and ADA Hostile Work Environment Claims

At the hearing, Plaintiff conceded that he failed to exhaust his administrative remedies concerning his ADEA claim, therefore the court lacks subject matter jurisdiction, and summary judgment for Defendant is appropriate on Plaintiff's ADEA claim. *See* 29 U.S.C. § 626(d)(1)("No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission."); *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009)(a failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim).

Similarly, Plaintiff conceded at the hearing that he cannot establish the elements of his ADA hostile work environment claim. Therefore, summary judgment for Defendant is appropriate on that claim.

2.   Title VII Claim for Race Discrimination

Plaintiff alleges he was discriminated against in violation of Title VII on the basis of his race beginning in mid-2008.[1] Because Plaintiff lacks any direct evidence of race discrimination, he proceeds on the indirect evidence burden-shifting method of proof established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973). Plaintiff has the initial burden to establish a prima facie case by the preponderance of the evidence by showing that (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was performing his job duties at a level that met his employer's legitimate expectations at the time of the adverse employment action; and (4) his position remained open or was filled by a similarly-qualified person outside the protected class. *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir.2004) (en banc). If Plaintiff establishes the prima face case, the burden then shifts to Defendant "to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Id.*

Defendant argues Plaintiff is unable to establish his prima facie case because although he is African American and was terminated, he cannot demonstrate (1) that he was performing his job duties at a level that met his employer's legitimate expectations; or (2) that he was replaced by a similarly-qualified person outside the protected class.

Plaintiff cannot demonstrate at the time of his termination, he was performing at a level

---

[1] Although his SCHAC charge and complaint allege discrimination on the basis of race, sex, and disability, at the summary judgment hearing, Plaintiff limited his allegations of Title VII discrimination to race.

9

that met his employer's legitimate expectations. The case law reflects a distinction between whether a plaintiff is qualified for a job and whether he is meeting the employer's legitimate job expectations. *See Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 514 (4th Cir. 2006)(plaintiff's argument that "he only needs to show that he is 'qualified' for the job, rather than meeting his employer's legitimate job expectations, is foreclosed by circuit precedent"). As the *Warch* court elaborated, "considering an employer's legitimate expectations comports with the purpose of requiring the establishment of a prima facie case—to screen out those cases whose facts give rise to an inference of nondiscrimination, in other words, to eliminate the most common, nondiscriminatory reasons for the employer's conduct." *Warch* at 514. The court made a distinction between the hiring of a new employee, where the typical focus is on the candidates' qualifications, and the firing of an employee, where the more likely focus is "on other aspects of the employment, such as poor job performance or infractions of company rules." *Id.*

Further, Plaintiff cannot demonstrate that his position remained open or was filled by similarly-qualified person outside the protected class. Defendant presented evidence, uncontested by Plaintiff, that the position was filled by an African American. (Beadling Aff., ¶ 12).

Even if the court assumes that the prima facie case is satisfied, Plaintiff cannot overcome his burden under *McDonnell-Douglas*. Defendant has offered a legitimate reason for terminating Plaintiff: his repeated volatile conflicts with coworkers and management, culminating in his insubordination with his Assistant Store Manager, Deluca. The undersigned submits this explanation is sufficient to shift the burden to Plaintiff, who must show that the

legitimate reasons offered by Defendant were not the true reasons, but were a pretext for discrimination. This burden on Plaintiff merges with his ultimate burden of persuading the court that he is the victim of intentional discrimination. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

Plaintiff fails to offer sufficient evidence of pretext and racial discrimination. He relies entirely on his suspicion that race must have been a factor because, in his mind, he was treated unfairly, and because he is black, that must be the reason. [Entry #29-2 at 70–71; #29-3 at 3–4]. Plaintiff testified that he believes sales associates and management made up lies and falsely accused him of things, which he considered to be harassment. [Entry #29-2 at 44, 60, 61, 69, 76–77, 81–82, 91, 92, 93–94, 101, 114–115, 117; #29-3 at 21, 27, 50, 66, 76–77].

Plaintiff claims he verbally complained about race discrimination on the following occasions: (1) during the early part of 2008 to Hand and Beadling (which is prior to when he contends the discrimination actually started) [Entry #29-2 at 39, 41–42]; (2) to Hand, alleging "several times" that Beadling and Deluca were "harassing" him and trying to get him fired [Entry #29-2 at 95]; (3) at his lunch meeting in June 2009 with Kalick and Hand. Plaintiff claims he advised them that he believed he was being discriminated against, harassed, and that he worked in a hostile environment due to his race [Entry #29-3 at 35–36; and (4) to Beadling "a couple of times" that the "discrimination and harassment has to stop or else [he was] going to pursue an attorney." [Entry #29-3 at 69–70]. Beadling, Hand, and Kalick all dispute Plaintiff's unsubstantiated allegations that he complained about any kind of discrimination during his employment. [Entry #29-9 at 7; #29-7, ¶ 14; #29-8 at 5, 7]. However, in his seven

11

letters to HR over a one-year period complaining of what he perceived as slights and unfair management actions, Plaintiff never stated that he was being treated differently because of his race.

Because Plaintiff's subjective assertions and unsupported speculation are insufficient to create genuine dispute of material fact as to Defendant's allegedly discriminatory conduct, Plaintiff must come forward with allegations substantiated by accounts of specific dates, times or circumstances to survive summary judgment. *See Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir.2003)("neither unsupported speculation, nor evidence that is merely colorable or not significantly probative will suffice to defeat a motion for summary judgment; rather, if the adverse party fails to bring forth facts showing that reasonable minds could differ on a material point, then, regardless of any proof or evidentiary requirements imposed by the substantive law, summary judgment, if appropriate, shall be entered.")(internal citations omitted); *and Gilliam v. South Carolina Dept. Of Juvenile Justice*, 474 F.3d 134 (4th Cir.2007)("Although [the plaintiff] made several general statements of dissimilar treatment, she provided very few specifics. The few specific examples [the plaintiff] did proffer were not supported by any evidence other than her own general statements, which often lacked detail. Such assertions, standing alone, are insufficient to sustain an actionable Title VII claim.")(internal citations omitted).

At the hearing, Plaintiff argued that the events of September 28, 2009 were not as depicted by Defendant. However, "Title VII is not a vehicle for substituting the judgment of a court for that of the employer." *Jiminez v. Mary Washington College*, 57 F.3d 369, 377 (4th Cir.

12

1995). Courts do not sit as "super personnel departments second guessing an employer's perceptions of an employee's qualifications." *Malghan v. Evans*, 118 Fed.Appx. 731 (4th Cir. 2004), *citing Smith v. University of N. Carolina*, 632 F.2d 316, 346 (4th Cir.1980). In fact, "the law does not require an employer to make, in the first instance, employment choices that are wise, rational, or even well-considered, as long as they are nondiscriminatory. *Id.*, *citing Powell v. Syracuse Univ.*, 580 F.2d 1150, 1156–57 (2d Cir.1978). Plaintiff has presented no evidence that Defendant's decision to terminate him was other than because it believed the complaints of his coworkers and Deluca. In fact, the evidence establishes that the complaints were believed: Plaintiff was repeatedly disciplined and counseled; Hand suggested that Plaintiff obtain the assistance of EAP; and Plaintiff's denials of bad behavior were not credited in light of the continuing complaints from multiple individuals. Defendant presented evidence that Plaintiff's hostility was witnessed by two individuals on September 28, 2009. Even if Plaintiff denies that he behaved as alleged, there is no evidence that Defendant's management, as the decisionmakers, did not honestly believe and rely on their good faith belief that Plaintiff had been insubordinate. Plaintiff has no evidence to cast doubt on this legitimate, non-retaliatory reason for his discharge.

> The court's only concern is
>
> whether the reason for which the defendant discharged the plaintiff was discriminatory. Thus, when an employer articulates a reason for discharging the plaintiff not forbidden by law, it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination.

*DeJarnette v. Corning Inc.*, 133 F.3d 293 (4th Cir. 1998) *citing Giannopoulos v. Brach & Brock*

*Confections, Inc.*, 109 F.3d 406, 410–411 (7th Cir.1997).

Plaintiff attempts to show that Defendant's nondiscriminatory reasons for his termination are pretextual by relying on his own opinion. However, the Fourth Circuit has repeatedly explained that "it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 960–61 (4th Cir.1996)(internal citations omitted). Accordingly, Plaintiff's perception of himself is not relevant. Plaintiff has failed to demonstrate as a reasonable probability that Defendant's belief was either false or pretextual for discrimination. *DeJarnette,* 133 F.3d at 299 (employee must present evidence reasonably calling into question the honesty of his employer's belief; employee's mere demonstration that his employer's belief may be incorrect is not sufficient to prove discrimination).

In sum, nothing in the evidence or arguments presented rebuts Defendant's legitimate reason for terminating Plaintiff. Plaintiff has failed to provide any evidence that racial discrimination was the real reason for his termination instead of the reasons Defendant proffered. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000)(noting it is not enough to disbelieve the defendant—a factfinder must believe plaintiff's explanation of intentional race discrimination). There is no evidence from which a reasonable jury could conclude Plaintiff is entitled to a verdict. Therefore, the undersigned submits that Defendant is entitled to summary judgment on Plaintiff's Title VII claim for race discrimination.

### 3.    Claim for Failure to Accommodate Under the ADA

Plaintiff contends that Defendant violated the ADA by denying him a reasonable

accommodation for his disability. For the purposes of its motion, Defendant does not dispute that Plaintiff's diabetes constitutes a disability within the meaning of the ADA, but submits that Plaintiff was not denied a reasonable accommodation.

At the hearing, Plaintiff rested his ADA failure to accommodate claim on the single episode of September 28, 2009, when Deluca denied his request to leave the Store for his lunch break. Defendant claims, and Plaintiff does not contest, that he was provided with the same break opportunities as all other employees. (Pl.'s Dep. 336–338).

Under the ADA, an employer must make "reasonable accommodations" for a disabled employee, unless the employer can demonstrate that the accommodation "would impose an undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5)(A). The law does not require that "the employer go out of his way to provide an accommodation for a disabled employee, but only requires that accommodations are 'reasonable.'" *Schneider v. Giant of Maryland, LLC*, 389 Fed.Appx. 263 (4th Cir. 2010), quoting *Vande Zande v. State of Wis. Dep't of Admin.*, 44 F.3d 538, 542 (7th Cir.1995) ("To 'accommodate' a disability is to make some change that will enable the disabled person to work ... [and] at the very least, the cost could not be disproportionate to the benefit.").

Plaintiff presented no evidence that he requested to take his lunch break on account of his diabetes—*i.e.*, that he was requesting a reasonable accommodation. The evidence in the record reflects that Plaintiff asked and was denied permission to leave the Store during that evening's shift when it was short-staffed. There is no evidence that Plaintiff was denied the opportunity to eat at the Store, or to take his lunch break at the Store. Plaintiff only complains

15

that he was not allowed to leave the Store to have dinner with his family.  Viewing the evidence in the light most favorable to Plaintiff, the undersigned finds that the mere fact that Defendant refused to permit Plaintiff to leave the Store on a short-staffed shift to have dinner with his family does not show that Defendant failed to give Plaintiff a reasonable accommodation for his disability.

                4.       Retaliation on Basis of Race

Plaintiff alleges that Defendant retaliated against him for complaints of race discrimination in violation of Title VII.   Title VII's retaliation provision forbids "an employer to discriminate against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice."  42 U.S.C. § 2000e–3(a).  To establish a prima facie claim for retaliation, Plaintiff must prove that: (1) he engaged in protected activity; (2) an adverse action was taken against him; and (3) Defendant took the adverse action because of his protected activity. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). If Plaintiff satisfies the prima facie case, the burden of production shifts to Defendant to articulate a legitimate, nondiscriminatory reason for the action. *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 311 (1996). After Defendant meets this burden, Plaintiff must prove that Defendant's proffered reason is pretext for retaliation. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507–08 (1993). Although Plaintiff experienced an adverse action through his termination, he cannot establish the first or third elements of his retaliation claim.

To establish that he engaged in protected activity, Plaintiff must show that he opposed an unlawful employment practice that he reasonably believed had occurred. *Peters v. Jenney*,

16

327 F.3d 307, 320 (4th Cir. 2003). Similar to the insufficiency of his race discrimination claim, Plaintiff's retaliation claim fails for lack of evidence. While he claims he verbally complained to management about alleged discrimination, none of Plaintiff's letters to HR mention race discrimination, and his unsubstantiated allegations do not create a genuine dispute of material fact. *Evans*, 80 F.3d at 960 (4th Cir. 1996).

Even if the court assumes that Plaintiff had engaged in protected activity, his retaliation claim fails because he cannot prove a causal connection between that activity and his termination. Defendant has presented a legitimate, nondiscriminatory reason for his termination, to wit: his insubordinate conduct towards Deluca despite repeated counseling and warnings to reform his conduct. Plaintiff's termination occurred more than a year after his first alleged complaint of discrimination, which is a period of time that negates any possible connection between his purported protected activity and the adverse action. *See, e.g., Clark County Sch. Dist. v. Breeden*, 532 U.S. 268 (2001) (20-month period between adverse action and protected activity does not suggest causality); *Vasquez v. County of L.A.*, 349 F.3d 634 (9th Cir. 2004) (13-month gap); *Bishop v. Bell Atl. Corp.*, 299 F.3d 53 (1st Cir. 2002) (12-month gap).

The undersigned recommends that the court grant Defendant summary judgment on Plaintiff's claim of retaliation in violation of Title VII.

III.    Conclusion

For the foregoing reasons, the undersigned recommends that Defendant's motion for summary judgment [Entry #29] be granted.

IT IS SO RECOMMENDED.

October 7, 2011                              Shiva V. Hodges
Florence, South Carolina                     United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**